Felix CASTILLO, Jr., Appellant,

v.

**The STATE of Texas, Appellee.**

**No. 13–02–458–CR.**

Court of Appeals of Texas, Corpus Christi–Edinburg.

Oct. 6, 2005.

Rehearing Overruled March 23, 2006.

Joseph A. Connors, III, Victoria Guerra, McAllen, for appellant.

Theodore C. Hake, Asst. Crim. Dist. Atty., Amy Howell Alaniz, Asst. Dist. Atty., Edinburg, for appellee.

Before Justices YAÑEZ, CASTILLO, and GARZA.

## OPINION

Opinion by Justice GARZA.

Felix Castillo, Jr. challenges his convictions for murder and attempted capital murder by 21 issues; however, his brief addresses only the following five issues: (1) appellant's convictions are barred by the doctrine of double jeopardy; (2) appellant received ineffective assistance of counsel; (3) the trial court erred by failing to hold a hearing to determine whether appellant had knowingly waived an alleged conflict of interest resulting from his counsel's brief dual representation of appellant and one of his co-defendants; (4) the trial court erred by admitting evidence of extraneous offenses because the State did not provide adequate notice of its intent to offer such evidence; and (5) the trial court erred by denying appellant's oral request for severance of defendants and oral request for mistrial. To the extent appellant seeks to challenge his convictions based on any other issues, his brief fails to present anything for this Court to review, as it does not contain a clear and concise argument for the contentions made, together with appropriate citations to authorities and to the record. *See* TEX.R.APP. P. 38.1(h). For the reasons that follow, we

overrule appellant's five issues and affirm the judgment of the trial court.

## Background

Francisco "Frank" Sanchez was killed in a drive-by shooting on December 31, 2000. Rafael Almanza was shot in the same incident, but he survived. Appellant was charged by indictment with one count of murder for the killing of Sanchez and one count of attempted capital murder for trying to kill both Sanchez and Almanza. Appellant was tried jointly with two co-defendants: his wife Mary Socorro Avila Castillo ("Mary"), who was acquitted of the murder and attempted capital murder charges but convicted of tampering with evidence for disposing of the murder weapon, and Mary's cousin, Javier Hernandez Reyes ("Javier"), who was acquitted of the murder and attempted capital murder charges. Appellant was convicted of murder and attempted capital murder, and this appeal ensued.

## I. Double Jeopardy

■ In his first issue, appellant asserts that he has been punished twice for the murder of Frank Sanchez. Specifically, he argues that, because he was convicted and punished for Sanchez's murder, the State should not have been able to use an attempt to murder Sanchez as part of the attempted capital murder charge. Although appellant failed to raise any double jeopardy objection before the trial court, *see* TEX.R.APP. P. 33.1, a double jeopardy claim may be raised for the first time on appeal if (1) the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record and (2) enforcement of usual rules of procedural default serves no legitimate state interests. *Gonzalez v. State,* 8 S.W.3d 640, 643 (Tex. Crim.App.2000).

■ The Fifth Amendment guarantee against double jeopardy consists of three separate constitutional protections: first, it protects against a second prosecution for the same offense after acquittal; second, it protects against a second prosecution for the same offense after conviction; and third, it protects against multiple punishments for the same offense. *Lopez v. State,* 108 S.W.3d 293, 295–96 (Tex.Crim. App.2003). Appellant has raised an issue relating to the "multiple punishments" aspect of the double jeopardy doctrine. The Fifth Amendment's multiple punishments prohibition is violated if a defendant "is convicted of more offenses than the legislature intended." *Ex Parte Ervin,* 991 S.W.2d 804, 807 (Tex.Crim.App.1999) (citing *Ball v. United States,* 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985)). The legislature is endowed with the power to establish and define criminal offenses. *Ex parte Hawkins,* 6 S.W.3d 554, 556 (Tex. Crim.App.1999). The Double Jeopardy Clause puts little, if any, limitation on this power. *Id.* In *Blockburger,* the United States Supreme Court stated, "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

The court of criminal appeals has explained that, in the multiple punishments context, the *Blockburger* test is simply a rule of statutory construction, which is useful in attempting to ascertain legislative intent. *Ervin,* 991 S.W.2d at 807 (citing *Missouri v. Hunter,* 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983)). The *Blockburger* test cannot negate a clearly expressed legislative intent to impose multiple punishments. *Id.* (citing *Hunter,* 459

U.S. at 368, 103 S.Ct. 673). The status of the *Blockburger* test as a "mere rule of statutory construction" raises an inverse conclusion as well: the *Blockburger* test cannot authorize two punishments where the legislature clearly intended only one. *Id.* And that status raises the possibility that there exist other rules of statutory construction that may be employed to help ascertain whether a legislature intended multiple punishments. *Id.* Other (nonexclusive) considerations relevant to determining whether the legislature intended multiple punishments are (1) whether the offenses are contained within the same statutory section, (2) whether the offenses are phrased in the alternative, (3) whether the offenses are named similarly, (4) whether the offenses have common punishment ranges, (5) whether the offenses have a common focus (i.e., whether the "gravamen" of the offenses is the same) and whether that common focus tends to indicate a single instance of conduct, (6) whether the elements that differ between the offenses can be considered the "same" under an imputed theory of liability that would result in the offenses being considered the same under *Blockburger* (i.e., a liberalized *Blockburger* standard utilizing imputed elements), and (7) whether there is legislative history containing an articulation of an intent to treat the offenses as the same or different for double jeopardy purposes. *Id.* at 814.

### A. The *Blockburger* Test

Review of the statutory elements of the charged offenses shows that murder and attempted capital murder (based on an attempt to commit multiple murders) are not the same offense under the *Blockburger* test. Each offense requires proof of a fact which the other does not. *See Blockburger,* 284 U.S. at 304, 52 S.Ct. 180. A person commits the offense of murder if he intentionally or knowingly causes the death of an individual. Tex. Penal Code Ann. § 19.02(b)(1) (Vernon 2003). A person commits the offense of attempted capital murder if he specifically intends to commit the offense of capital murder (here, the murder of more than one person during the same criminal transaction) and does an act amounting to more than mere preparation that tends but fails to effect the commission of capital murder. Tex. Penal Code Ann. §§ 15.01(a) (Vernon 2003), 19.03(a)(7)(A) (Vernon Supp.2004–05). Each offense thus requires proof of a fact which the other does not: (1) murder requires the death of an individual and attempted capital murder does not, and (2) attempted capital murder requires an intent to kill more than one person and murder does not. The offenses are therefore different under the *Blockburger* test. *See Blockburger,* 284 U.S. at 304, 52 S.Ct. 180.

### B. Other Considerations

As explained above, in the context of multiple punishments, the *Blockburger* test is a "mere rule of statutory construction." *Ervin,* 991 S.W.2d at 807. The ultimate inquiry is whether the legislature intended to permit multiple punishments. *Id.* at 814. To conduct this inquiry, we must consider not only the *Blockburger* test but also the other nonexclusive factors enumerated by the court of criminal appeals in *Ervin. See id.* at 814. In this case, these factors militate against a conclusion that the charged offenses are the same for double jeopardy purposes: (1) the statutory provisions for each offense are not located in the same section, *see* Tex. Penal Code Ann. §§ 15.01(a), 19.02(b)(1), 19.03(a)(7)(A); (2) the offenses are not phrased in the alternative; (3) they are similarly named only in that the titles of both offenses include the term "murder"; (4) they do not necessarily have the

same punishment range;[1] (5) the offenses do not have a common focus tending to indicate a single instance of conduct because the gravamen of murder is the intentional killing of a person, whereas the focus of attempted capital murder is the intentional attempt to kill more than one person; (6) the offenses are not the same under *Blockburger;* and (7) we are unaware of any legislative history containing an articulation of an intent to treat the offenses as the same or different offenses for double jeopardy purposes.

Based on these considerations, we conclude that the charged offenses are not the same for the purpose of double jeopardy. Accordingly, appellant's first issue is overruled.

## II. Ineffective Assistance of Counsel

In his second issue, appellant argues he was provided ineffective assistance of counsel because his trial counsel (1) failed to withdraw from representing appellant after discovering that he had a conflict of interest, (2) failed to file a motion for severance of defendants on behalf of appellant, (3) failed to file a motion for new trial, and (4) abandoned appellant prior to the deadline for filing a motion for new trial.

We apply a two-prong test to determine whether representation was so inadequate that it violated the Sixth Amendment right to counsel. *Munoz v. State,* 24 S.W.3d 427, 433 (Tex.App.-Corpus Christi 2000, no pet.) (citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hernandez v. State,* 726 S.W.2d 53, 54–55 (Tex.Crim.App.1986)). First, trial counsel's performance must fall below an objective standard of reasonable-

ness. *Id.* (citing *Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052). Second, appellant must prove, by a reasonable probability, that counsel's deficient performance prejudiced the defense; that, but for counsel's errors, the result of the proceeding would have been different. *See id.* (citing *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* at 433–34 (citing *Strickland,* 466 U.S. at 693, 104 S.Ct. 2052). Appellant must overcome a strong presumption that counsel's performance fell within the wide range of reasonable professional assistance. *Id.* at 434 (citing *Thompson v. State,* 9 S.W.3d 808, 812–14 (Tex.Crim. App.1999); *Tijerina v. State,* 921 S.W.2d ‚287, 289 (Tex.App.-Corpus Christi 1996, no pet.)).

### A. Conflict of Interest

In his first sub-issue, appellant contends that his attorney, Jesus "Jesse" Contreras, rendered ineffective assistance of counsel by failing to withdraw from representing appellant after he discovered a conflict of interest. The alleged conflict arose from counsel's dual representation of appellant and appellant's wife, Mary. In order to address this contention, we must review the circumstances of counsel's dual representation.

#### 1. Relevant Facts

Appellant was arrested on April 20, 2001 and requested court-appointed counsel on April 27, 2001. The trial court initially appointed attorney John Rivera, who "returned it in June." The court then appointed attorney Rogelio Garza on June 21,

1. Murder is either a first or second degree felony, depending on whether a finding of sudden passion is made. Tex. Penal Code Ann. § 19.02(c) (Vernon 2003). Because criminal attempt is one degree lower than the underlying offense, attempted capital murder is a first degree felony. Tex. Penal Code Ann. §§ 15.01(d) (Vernon 2003), 19.03(b) (Vernon Supp.2004–05).

2001. Appellant was indicted on August 2, 2001. Attorney Jesse Contreras was then retained to represent appellant and appeared for the first time on appellant's behalf on August 7, 2001.

Meanwhile, Mary was also indicted on August 2, 2001, but the indictment was only for tampering with evidence. The court appointed attorney Lydia Reed to represent Mary. Jesse Contreras first appeared on Mary's behalf on August 28, 2001. On February 14, 2002, Mary was additionally indicted for the murder of Sanchez and attempted capital murder for trying to kill both Sanchez and Almanza. On February 19, 2002, Contreras appeared with Mary as she was arraigned on the new charges; the court "appointed" Contreras to represent Mary on those charges.[2]

The attorneys learned on February 21, 2002 that the trial court wanted to try all three defendants together. On March 21, 2002, a bench conference was held off the record. Shortly thereafter, on March 25, 2002, the court appointed attorney O. Rene Flores to represent Mary. Flores filed a motion to substitute on April 3, 2002. He filed a formal appearance and a designation of attorney-in-charge on April 9, 2002.

The sequence of representation was clarified at a pretrial hearing held on May 16, 2002. At the hearing, Contreras stated that he had previously informed the court of a potential conflict of interest due to his representation of appellant and appellant's wife, Mary. All parties agreed that Contreras had given the court such notice and that, as a result, the court had appointed Flores to represent Mary. Mary was sworn in and testified that she had retained Contreras to represent her on the tampering charge and an unrelated burglary charge. She agreed that a conflict of interest had arisen when she was indicted

on the murder and attempted capital murder charges because Contreras was already representing her husband against those same charges. Flores stated that he had opened his file on Mary's case on March 25, 2002. Flores then moved to withdraw from representing Mary because he had previously represented a person listed on the State's witness list. Mary testified that she wanted Flores to continue as her attorney. The court denied the motion to withdraw, and Flores represented Mary throughout the trial.

In sum, the record shows that Contreras represented appellant from August 2, 2001, shortly after his indictment, until August 20, 2002, when appellant had been convicted and appellate counsel was appointed to represent him. The record shows that Contreras also represented Mary on the murder and attempted murder charges for approximately 34 days, from February 19, 2002 until March 25, 2002. Appellant asserts that the short period of dual representation amounted to ineffective assistance of counsel; however, he has not met his burdens of showing that his trial counsel had an actual conflict of interest and that the conflict actually affected his counsel's performance.

### 2. Analysis

Ineffective assistance of counsel may result when an attorney labors under a conflict of interest. *Monreal v. State,* 947 S.W.2d 559, 564 (Tex.Crim.App.1997) (citing *Strickland,* 466 U.S. at 692, 104 S.Ct. 2052). A defendant can demonstrate a violation of his right to the reasonably effective assistance of counsel if he can show (1) that his counsel was burdened by an actual conflict of interest and (2) that the conflict had an adverse effect on specific instances of counsel's performance. *Id.* (citing *Cuyler v. Sullivan,* 446 U.S. 335,

2. Mary later testified that Contreras had actually been retained.

348–50, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)). An "actual conflict of interest" exists if counsel is required to make a choice between advancing his client's interest in a fair trial or advancing other interests (perhaps counsel's own) to the detriment of his client's interest. *Id.* Thus, an actual conflict of interest exists when one defendant stands to gain significantly by counsel adducing probative evidence or advancing plausible arguments that are damaging to the cause of a co-defendant whom counsel is also representing. *James v. State,* 763 S.W.2d 776, 779 (Tex.Crim.App. 1989); *see also Routier v. State,* 112 S.W.3d 554, 584 (Tex.Crim.App.2003).

Appellant has failed to identify any actual conflict of interest. Counsel's dual representation ceased some two months before trial commenced. Furthermore, the record does not show that appellant and his wife had divergent interests or ever advanced inconsistent defensive theories. Mary stated that she was with her family on December 31, 2000, the night of the murder. She also stated that appellant was at his home sleeping that night and that he later joined her at her parents' home for the rest of the evening. Appellant never gave a statement to police and did not testify at trial. Because we cannot discern how the defensive theories of appellant and Mary diverged, we cannot conclude that counsel ever faced a choice of advancing either defendant's interests to the detriment of the other. Likewise, we cannot conclude that any conflict had an adverse effect on specific instances of counsel's performance. *See Hurley v. State,* 606 S.W.2d 887, 890 (Tex.Crim.App. 1980) ("[A] common defense often gives strength against a common attack.").

Appellant faults his trial counsel for failing to file a motion to sever defendants on his behalf and for failing to object to the admission of Mary's and Javier's statements into evidence at trial. There is no evidence in the record that any action taken or not taken by counsel was due to any conflict of interest, and appellant has failed to establish any connection between these instances of counsel's performance and any conflict of interest. Accordingly, we will not sustain appellant's ineffectiveness claim based on his first sub-issue.

## B. Failure to Obtain Severance of Defendants

In his second sub-issue, appellant contends that counsel was ineffective because he did not file a motion to sever defendants on behalf of appellant.

### 1. Relevant Facts

The clerk's record shows that no written motion to sever defendants was filed on behalf of appellant; however, at least three motions to sever defendants were filed on behalf of Mary. The defendants were first notified on February 21, 2002 that the trial court had decided to consolidate their cases for trial. At a pretrial hearing on May 16, 2002, Javier's counsel opposed severance of defendants, telling the court, "[M]y understanding is that . . . [all three co-defendants] will contend that they were not at all at the scene of the shooting on the date of the incident." Appellant's counsel disputed this, stating that Javier had given a statement that appellant was responsible and that Mary and appellant had implicated Javier. The prosecutor stated that he opposed the severance because the defendants

> were all claiming they were somewhere else when this alleged offense took place. Their defenses are not inconsistent with each other. They are consistent with each other. They are just saying, we weren't there, we didn't do it. Each defendant has taken that position, I wasn't there I didn't do it, I was

somewhere else. And so it's our position that these cases should be tried at the same time.

None of the parties introduced the co-defendants' statements or otherwise adduced any evidence of prejudice. The trial court denied the motion for severance of defendants. On May 22, 2002, the trial court denied Mary's motion to reconsider severance of defendants.

Mary's counsel re-urged her motion to sever defendants at trial. After the lead investigator had testified about Mary's statements to him, both Mary's statement and Javier's statement were introduced with no objection from appellant or his co-defendants. The State then passed the witness. Javier's counsel then cross-examined the investigator. During the cross-examination, both Mary and appellant objected to a question about Mary's testimony at a pretrial hearing, which was given solely for the purpose of determining whether her statement to police was voluntary. At this time, Mary's counsel re-urged the motion to sever "because it has become very obvious there is antagonism between the defendants." The court denied the motion "because the statement has already come into evidence." Appellant's counsel moved for a mistrial because "it's become apparent that at least one of the defendants is against the other defendants." The court denied the motion "as being premature at this time." Mary's counsel asserted that "it's obviously prejudicial for one client to implicate the other in trial, and that's the situation we have had here and we have had at the beginning." The court denied her motion for mistrial.

### 2. Analysis

■ In his second sub-issue, appellant contends that his trial counsel was ineffective because he did not file a motion to sever defendants on behalf of appellant.

Even assuming, *arguendo*, that counsel's performance was deficient, as appellant contends, appellant has failed to establish by a reasonable probability that the result of the proceeding would have been different but for counsel's deficient performance. *See Munoz*, 24 S.W.3d at 433. As the State argues, appellant has not demonstrated how being tried separately would have affected the ultimate outcome of the proceedings. Appellant seems to suggest that Javier would not have testified in a severed trial, but we have no assurance that would have been the case. Furthermore, several other witnesses corroborated Javier's account, including Arnulfo Hinojosa, Jr., Eddie Villaneuva, and Hope Caseras. We have no basis for concluding that these witnesses would not have testified in a severed trial, if appellant had been granted one.

The record also shows that appellant had no real alibi other than the testimony of his relatives that he was either sleeping at his house or with them at the time of the shooting. Appellant did not testify at trial. Javier, in contrast, made two statements to police that corroborated his trial testimony that he was at a party with many other people when the shooting occurred and that appellant later boasted about doing the shooting. Three other witnesses and a photograph also corroborated Javier's presence at the party, and one of the witnesses also corroborated appellant's admissions that he did the shooting. We have no basis for concluding that the evidence would have been different in a separate trial.

Because no prejudice has been shown, we cannot sustain appellant's ineffectiveness claim based on his second sub-issue.

### C. Failure to File a Motion for New Trial

In his third sub-issue, appellant contends that his trial counsel rendered inef-

fective assistance by failing to file a motion for new trial.

### 1. Relevant Facts

Appellant was sentenced on June 12, 2002. On June 19, 2002, counsel for appellant filed a motion to withdraw, which the trial court never granted. Counsel filed a notice of appeal on appellant's behalf. On June 27, 2002, counsel for appellant filed a motion for "a court-appointed appeals attorney to be substituted as counsel of record for defendant on the Notice of Appeal." A "Motion to Appoint Appellate Counsel" signed by appellant himself was also filed on June 27, 2002. In that motion, appellant indicated his desire to appeal his convictions, asked the court "to take judicial notice of his indigency," and stated that a notice of appeal had already been filed. Appellant did not express any interest in filing a motion for new trial, and no motion for new trial was ever filed. The trial court appointed appellate counsel on August 20, 2002.

### 2. Analysis

■ Whether a defendant is entitled to effective assistance of counsel during the time limit for the filing of a motion for new trial has not been definitively decided by the court of criminal appeals. *Smith v. State,* 17 S.W.3d 660, 663 n. 3 (Tex.Crim. App.2000). Several courts of appeals have held that effective assistance is required in this period. *Barnett v. State,* 76 S.W.3d 739, 741 (Tex.App.-Waco 2002, pet. ref'd); *Prudhomme v. State,* 28 S.W.3d 114, 119 (Tex.App.-Texarkana 2000, no pet.); *Hanson v. State,* 11 S.W.3d 285, 288 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd); *Massingill v. State,* 8 S.W.3d 733, 736 (Tex.App.-Austin 1999, pet. ref'd); *Burnett v. State,* 959 S.W.2d 652, 656 (Tex.App.-Houston [1st Dist.] 1997, pet. ref'd). Because the State does not dispute appel-

lant's contention that effective assistance is required during the time limit for filing a motion for new trial, we assume, without deciding, that effective assistance is required. *See Smith,* 17 S.W.3d at 663 n. 3 ("We are not asked to decide this issue today and will not do so....").

■ When a motion for new trial is not filed in a case, there is a rebuttable presumption that it was considered by the appellant and rejected. *Oldham v. State,* 977 S.W.2d 354, 363 (Tex.Crim.App.1998). In this case, there is no evidence to rebut the presumption that counsel adequately informed appellant of his right to file a motion for new trial and that appellant rejected the option. There is no evidence to show that appellant was interested in filing a motion for new trial or that counsel did not adequately assist him in doing so. *See Hudson v. State,* 128 S.W.3d 367, 381 (Tex.App.-Texarkana 2004, no pet.) ("There is no evidence in the record that Hudson was interested in the option of filing a motion for new trial and that counsel did not adequately assist him in doing so. Therefore, nothing in the record exists to rebut the presumption that Hudson was adequately informed of his right to file a motion for new trial and that he ultimately rejected the option.") (citation omitted).

We cannot sustain appellant's ineffectiveness claim based on his third sub-issue.

### D. Abandonment of Appellant During Time Limit to File Motion for New Trial

■ In his fourth sub-issue, appellant argues that his trial counsel abandoned him prior to the deadline for filing a motion for new trial. This contention duplicates, for the most part, appellant's third sub-issue. Although trial counsel twice requested to be removed from the case, his requests were not granted until the trial court appointed appellate counsel on Au-

gust 20, 2002 and implicitly discharged trial counsel. Prior to the appointment of appellate counsel, trial counsel protected appellant's right to appeal by timely filing a notice of appeal on his behalf. Appellant seems to argue that trial counsel abandoned him because he did not file a motion for new trial, but as we noted above, there is no indication in the record that appellant was interested in filing a motion for new trial or that trial counsel failed to advise and assist appellant regarding a motion for new trial. For these reasons, we cannot sustain appellant's ineffectiveness claim based on his fourth sub-issue.

Having reviewed appellant's four sub-issues, we conclude that appellant's ineffectiveness claim is without merit. It is therefore overruled.

### III. Conflict of Interest

In a third issue, appellant seems to contend that the trial court erred by failing to hold a hearing to determine whether appellant had knowingly waived an alleged conflict of interest resulting from his counsel's brief dual representation of appellant and his co-defendant wife, Mary. As stated above, attorney Jesse Contreras informed the trial court of a potential conflict of interest more than two months before trial. In response to this concern, the trial court appointed separate counsel to represent Mary. After new counsel was appointed to represent Mary, no objections or concerns were raised of a potential conflict of interest arising from continued representation of appellant by Contreras. Appellant now contends that the trial court erred by failing to hold, on its own motion, a hearing to determine whether appellant had knowingly waived any potential conflict of interest.

We have already addressed the conflict-of-interest issue as part of appellant's ineffectiveness claim, which is the same approach taken by the court of criminal appeals in cases in which error is argued based on the trial court's failure to hold a hearing to investigate an apparent conflict. *See, e.g., Routier,* 112 S.W.3d at 581–86. In doing so, we concluded that appellant has failed to identify any actual conflict of interest. Appellant's third issue largely duplicates the contentions of his ineffectiveness claim as it relates to counsel's alleged conflict of interest. The only twist to appellant's third issue is that he now suggests that the trial court had an obligation to hold a hearing for the purpose of allowing appellant to waive the conflict of interest on the record. Based on our conclusion that no actual conflict of interest has been identified, we now conclude that appellant's third issue presents no additional basis for reversing the trial court's judgment. Accordingly, for the reasons stated in the relevant part of our disposition of appellant's ineffectiveness claim, we overrule appellant's third issue.

### IV. Notice of Intent to Introduce Extraneous Offenses

In his fourth issue, appellant contends that the trial court erred by admitting evidence of extraneous offenses because the State did not provide notice of its intent to offer such evidence. Rule 404(b) provides that evidence of "other crimes, wrongs, or acts" may be admissible for certain purposes "provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising from the same transaction." TEX.R. EVID. 404(b).

#### A. Relevant Facts

The record shows that appellant filed a request for notice of the State's intent to use extraneous offenses on August 21,

2001, less than a month after appellant was indicted. On appeal, appellant states, "No written document of record establishes the State's compliance with [appellant's] request." This statement is false. The record contains the State's written notice of intent to introduce extraneous offenses during its case-in-chief and as impeachment evidence. Specifically, the State informed appellant that it intended to introduce the following testimony:

> Roxanna Palacios will testify that sometime around November 2000, she saw Felix Castillo go to his house and bring out a semi automatic pistol under his waist under his shirt.
> Gregorio Granados & Crystal Granados will testify that on 12/31/00 Felix Castillo had a pistol on his person and pointed the pistol at Gregorio.

The certificate of service shows that the notice was faxed to trial counsel's office on Friday, May 17, 2002, three days before trial commenced. At trial, counsel admitted that he received the notice on May 17, 2002. Nevertheless, on Monday, May 20, 2002, the first day of trial, counsel objected to the adequacy of the State's notice. On May 29, 2002, just before Roxanna Palacios testified, counsel renewed his objection. The trial court instructed the State to refrain from "going into any testimony regarding the extraneous offense."

Roxanna Palacios was called by the State, and no questions regarding the extraneous offense were asked on direct examination. Counsel for Javier then cross-examined Roxanna. Counsel for appellant again objected to the introduction of evidence regarding the extraneous offense, arguing that the State's notice was untimely. This time the trial court overruled counsel's objection and allowed Roxanna to testify about the extraneous offense. Roxanna testified that, several months before the New Year's Eve shooting, Frank San-

chez (the deceased) spoke to appellant's girlfriend in front of appellant. Appellant ran into his house, and when he returned, he pulled out a handgun from under his shirt and fired it into the ground.

When the State called Crystal Granados to testify, counsel for appellant re-asserted his objection to the timeliness of the State's notice. The trial court did not expressly overrule this objection, but Crystal was allowed to testify that she saw appellant point a handgun at her husband, Gregorio, on the same night the fatal shooting occurred.

The State then called Gregorio to testify. Again, counsel for appellant objected to the timeliness of the State's notice. The objection was overruled, and Gregorio testified that appellant pointed a gun at him on the night of the fatal shooting.

### B. Analysis

As preliminary matter, we note that Roxanna's extraneous-offense testimony was introduced during cross-examination by Javier's counsel, not during the State's case-in-chief. The State argues that the notice provision of rule 402(b) therefore does not apply. Because it makes little, if any, difference to the outcome of this case, we assume, without deciding, that rule 402(b) applies and decide whether the trial court erred by overruling appellant's objections to the timeliness of the State's notice.

The ultimate issue is whether the State's notice was "reasonable." *See id.*; *Hayden v. State*, 66 S.W.3d 269, 272 (Tex.Crim.App.2001) ("The rule requires 'reasonable' notice."). The determination of reasonableness of the notice is committed to the sound discretion of the court. *Scott v. State*, 57 S.W.3d 476, 481 (Tex. App.-Waco 2001, pet. ref'd); *Sebalt v. State*, 28 S.W.3d 819, 822 (Tex.App.-Cor-

pus Christi 2000, no pet.). A determination that is within the zone of reasonable disagreement does not constitute an abuse of discretion. *Sebalt,* 28 S.W.3d at 822. In the absence of reasonable notice, a trial court's decision to admit evidence of an extraneous offense constitutes an abuse of discretion. *Scott,* 57 S.W.3d at 481.

In *Sebalt,* this Court recognized that there is *no authority* to support the proposition that notice given the Friday prior to a Monday trial is per se unreasonable. *Sebalt,* 28 S.W.3d at 821–22. Instead, the reasonableness of the notice is determined by all of the facts and circumstances of the case. *Id.* at 822. The reasonableness of the notice must also be determined by reference to the purpose of the rule: to eliminate the unfair prejudice that can result from the surprise introduction of extraneous offense evidence at trial. *Webb v. State,* 36 S.W.3d 164, 178 (Tex. App.-Houston [14th Dist.] 2000, pet. ref'd) (op. on reh'g).

In this case, no testimony of extraneous offenses was offered until 12 days after counsel received notice from the State. In our estimation, this was not a "surprise introduction." The trial court could have found that the State's notice was reasonable, and even if we were to disagree, appellant has failed to show that the ruling fell outside the zone of reasonable disagreement. Accordingly, appellant's fourth issue is overruled.

## V. Denial of Motion to Sever and Motion for Mistrial

In his fifth issue, appellant argues that the trial court erred by denying his pretrial oral request for severance of defendants and by denying his request for a mistrial. The facts relevant to this issue were stated in Part II B of this opinion, regarding the second sub-issue of appellant's ineffectiveness claim.

### A. Pretrial Motion to Sever

In his first sub-issue, appellant contends that the trial court erred by denying his pre-trial request to sever defendants. Article 36.09 provides as follows:

> Two or more defendants who are jointly or separately indicted or complained against for the same offense or any offense growing out of the same transaction may be, in the discretion of the court, tried jointly or separately as to one or more defendants; provided that in any event either defendant may testify for the other or on behalf of the state; and provided further, that in cases in which, upon timely motion to sever, and evidence introduced thereon, it is made known to the court that there is a previous admissible conviction against one defendant or that a joint trial would be prejudicial to any defendant, the court shall order a severance as to the defendant whose joint trial would prejudice the other defendant or defendants.

TEX.CODE CRIM. PROC. ANN. art. 36.09 (Vernon 1981). Accordingly, severance is not a matter of right but rests within the sound discretion of the trial court unless (1) there is a previous admissible conviction against one defendant or (2) a joint trial would, as a matter of law, prejudice a co-defendant. *Aguilar v. State,* 39 S.W.3d 700, 702 (Tex. App.-Corpus Christi 2001, pet. ref'd) (citing *Garza v. State,* 622 S.W.2d 85, 91 (Tex.Crim.App.1980)); *Smith v. State,* 998 S.W.2d 683, 686 (Tex.App.-Corpus Christi 1999, pet. ref'd). Absent evidence of prejudice to one defendant in a joint trial, or evidence that one of the defendants has a prior admissible conviction, a motion for severance is left to the trial court's discretion. *Mendoza v. State,* 61 S.W.3d 498, 501 (Tex.App.-San Antonio 2001), *aff'd,* 88 S.W.3d 236 (Tex.Crim.App.2002).

In this case, appellant asked the trial court to sever defendants because a joint trial would be prejudicial, but neither appellant's counsel nor counsel for his co-defendants produced any evidence of prejudice at the pretrial hearing on the motion to sever defendants. Although the co-defendants made various allegations of prejudice through their counsel, statements by counsel that are not made under oath do not constitute evidence. *Rodriguez v. State*, 903 S.W.2d 405, 412 (Tex.App.-Texarkana 1995, no pet.) (citing *Delgado v. State*, 544 S.W.2d 929 (Tex.Crim.App. 1977)). Therefore, the trial court did not err by denying the motion. *See Silva v. State*, 933 S.W.2d 715, 719 (Tex.App.-San Antonio 1996, no pet.) (citing *Ransonette v. State*, 550 S.W.2d 36, 41 (Tex.Crim.App. 1976)).

## B. Motion for Mistrial

■ In his second sub-issue, appellant contends that the trial court erred by denying his oral motion for mistrial, which argued that "it's become apparent that at least one of the defendants is against the other defendants." Although counsel's request was plainly for a mistrial, it followed an oral motion by Mary's counsel to sever defendants. The motion to sever defendants argued that it "has become very obvious there is antagonism between the defendants." The trial court denied the motion, and counsel for appellant subsequently moved for a mistrial. Given that the motion to sever and the motion for mistrial were urged on the same basis, we understand appellant's second sub-issue to challenge the trial court's refusal to sever defendants during trial.

■ A motion to sever on the grounds of unfair prejudice is "timely" if made at the first opportunity or as soon as the grounds for prejudice become apparent or should have become apparent, thus providing the trial court an opportunity to rule on the potentially prejudicial evidence at the time it is introduced. *Aguilar v. State*, 26 S.W.3d 901 (Tex.Crim.App.2000). In this case, the grounds for prejudice should have become apparent to counsel before trial. The prejudicial evidence was Javier's statement to police, in which Javier stated that he was at a party when the drive-by shooting occurred, that appellant picked him up at the party in a white truck, and that appellant later bragged about doing the shooting. There was also a letter from Javier to Deputy Jasso in which Javier related essentially the same story. At the pretrial hearing on the motion to sever, counsel for appellant indicated that he was aware of the contents of Javier's police statement but made no effort to produce it to the court for review. *See id.* at 905 ("In seeking a severance, evidence which a co-defendant *can* present prior to trial *should* be presented before trial.") (emphasis in original). Subsequently, at trial, Javier's police statement was admitted without objection from appellant or his co-defendants. Given these circumstances, we cannot conclude that counsel's motion to sever defendants during trial was timely. Accordingly, the trial court did not err by denying the motion.

Appellant's fifth issue is overruled.

## VI. Conclusion

For the foregoing reasons, appellant's issues on appeal are overruled and the judgment of the trial court is affirmed.