CAUSE NO. **3 76·15**

ORIGINAL

IN THE

COURT OF CRIMINAL APPEALS

OF TEXAS

RECEIVED IN
COURT OF CRIMINAL APPEALS

APR 02 2015

Abel Acosta, Clerk

TIMOTHY HERRING, APPELLANT

VS.

THE STATE OF TEXAS, RESPONDENT

---

APPELLANT PETITION FOR DISCRETIONARY REVIEW

---

FROM THE 271ST. DISTRICT COURT OF WISE COUNTY

CAUSE NUMBER (CR16345), AND THE SECOND

DISTRICT COURT OF APPEALS IN FORT WORTH, TEXAS

CAUSE NUMBER 02-12-00546-CR.

FILED IN
COURT OF CRIMINAL APPEALS

APR 02 2015

Abel Acosta, Clerk

TIMOTHY HERRING (PRO-SE)
TDCJ-NO. 01822827
JOHN CONNALLY UNIT
899 FM 632
KENEDY, TEXAS 78119

# TABLE OF CONTENTS

    PAGE

TABLE OF CONTENTS.................................................ii

INDEX OF AUTHORITY..............................................iii

STATEMENT OF PROCEDURAL HISTORY.................................iv

STATEMENT REGARDING ORAL ARGUMENTS..............................1

STATEMENT OF THE CASE...........................................2

GROUND FOR REVIEW:..............................................2

    GROUND FOR REVIEW NUMBER ONE:

    DID THE COURT OF APPEALS ERR IN CONDUCTING AN INCOMPLETE FACTUAL SUFFICIENCY REVIEW WHEN THE COURT FAILED TO DISCUSS KEY EVIDENCE CONTAINED IN THE RECORD, BUT INSTEAD ONLY CONSIDERED THE LEGAL SUFFICIENCY STANDARD OF REVIEW?

    REASON FOR REVIEW:

    THE COURT OF APPEALS HAS DECIDED AN IMPORTANT QUESTION OF STATE LAW THAT IS IN CONFLICT WITH APPLICABLE DECISIONS OF THE COURT OF CRIMINAL APPEALS, IN PARTICULAR SIMS v. STATE, NO. 1328-01 (TEX.CR.APP. MARCH 12,2003) AND CAIN v. STATE 958 S.W. 2d 404 (TEX.CR.APP. 1997)

ARGUMENT AND AUTHORITIES........................................3

PRAYER FOR RELIEF...............................................4

CERTIFICATE OF SERVICE..........................................5

APPENDIX [OPINION].......................................ATTACHED

## INDEX OF AUTHORITIES

STATE CASES:                                                    PAGES

SIMS v. STATE, NO. 1328-01 (TEX.CR.APP. MARCH 12, 2003).....2,3,4

CAIN v. STATE, 958 S.W.2d 404,408 (TEX.CR.APP.1997).........2,3,4

FEDERAL LAW

JACKSON v. VIRGINIA 443 U.S. 307, 319 (99 S Ct.2781,2789 (1979).3

STATUES

SEC. 15.01 (a), TEX.PENAL CODE ANN.(WEST 2011)...............iv,3

SEC. 19.02 (b)(1), TEX.PENAL CODE ANN (WEST 2011)...........iv,3

SEC. 19.03 (a)(1), TEX.PENAL CODE ANN. (WEST SUPP. 2013).....iv,3

CONSTITUTION PROVISIONS

14TH AMENDMENT U.S. CONST....................................2,3

6TH AMENDMENT U.S. CONST.....................................2,3

ART. 1 SEC. 10 TEX.CONST....................................2,3

## STATEMENT OF PROCEDURAL HISTORY

Appellant was indicted for Attempted Capital Murder. The offense was alleged to have occurred on or about June 2011. A jury convicted Appellant of Attempted Capital Murder, based on a Not guilty plea, the jury also convicted appellant of unauthoried use of a motor vehicle (The Tractor), a State jail Felony. The Trial Court sentenced appellant to Twenty (20) years confinement for the attempted capital murder conviction.

Appellant Appealed to the second District Court of Appeals in Fort worth, Texas.

On January 16, 2014 the Fort Worth court of Appeals rendered its decision affirming appellant's judgment of conviction. Appellant file a request for a out of time Petition for Discretionary Review. On February 11, 2015, the Texas Court of Criminal Appeals Granted the request. Appellant now files this Petition for Discretionary Review with the clerk of the Court of Appeals for filing within the Thirty (30) days after the court of criminal appeals made its Final Ruling on the cause.

CAUSE NO._____

IN THE

COURT OF CRIMINAL APPEALS

OF TEXAS

TIMOTHY HERRING, APPELLANT

VS.

THE STATE OF TEXAS, RESPONDENT

### APPELLANTS PETITION FOR DISCRETIONARY REVIEW

TO THE COURT OF CRIMINAL APPEALS OF TEXAS:

APPELLANT RESPECTFULLY SUBMITS THIS PETITION FOR DISCRETIONARY REVIEW AND MOVES THAT THIS HONORABLE COURT GRANT REVIEW OF THIS CAUSE AND OFFERS THE FOLLOWING IN SUPPORT THEREOF:

### STATEMENT REGARDING ORAL ARGUMENT

APPELLANT REQUESTS ORAL ARGUMENT IN THIS CASE BECAUSE SUCH ARGUMENT MAY ASSIST THE COURT IN APPLYING THE FACTS TO THE ISSUES RAISED. IT IS SUGGESTED THAT ORAL ARGUMENT MAY HELP SIMPLIFY THE FACTS AND CLARIFY THE ISSUES.

1

## STATEMENT OF THE CASE

Appellant was convicted of Attempted Capital Murder by a jury and sentence to Twenty (20) years of confinement by the court. Appellant seeks review of the court of appeals judgment affirming his conviction.

Specifically, The Court of Appeals did not detail or discuss the evidence in its factual sufficiency review and only applied the legal sufficiency review and did not properly evaluate the record in relation to the, "Evidentiary Sufficiency" complaint.

## GROUNDS AND REASONS FOR REVIEW

GROUND FOR REVIEW NUMBER ONE (RESTATED):

Did the court of appeals conduct an incomplete factual sufficiency review when the court failed to discuss key evidence contained in the record, but instead only considered the legal sufficiency standard of review?

## REASONS FOR REVIEW

The Court of Appeals has decided an important question of State or Federal law that is in conflict with Applicable decisions of the Court of Criminal Appeals, in particular, Sims v. State, NO. 1328-01 (TEX.CR.APP. MARCH 12,2003) and CAIN v. STATE, 958 S.W.2d, 404 (TEX.CR.APP.1997).

2

## ARGUMENT AND AUTHORITIES

The Court of Appeals affirmed the judgment of conviction and held that the evidence was sufficient to support the issue of whether the evidence showed the offense was committed with the "intent" to "kill" Trooper Patterson.

The Court of Appeals discussed some of the evidence then summarily held the..."Viewing the evidence in the light most favorable to the jury's verdict and deferring to the jury's weighing of the evidence, we conclude that a rational factfinder could have found the elements of attempted capital murder beyond a reasonable doubt." See, (CR. APP. OP. PP. 15-16) Quote JACKSON v. VIRGINIA, 443 U.S. 307, 319 (99 S.Ct. 2781, 2789 (1979). The Court did not, however refer to key evidence contained in the record or separately discuss the two different standard of review.

The following evidence, in which the court of appeals failed to consider, consisted of: (1) The Police received a report that two people were traveling in Wise County in a white van that was stolen (2) The Police found the van and although they quickly arrested the passenger, the driver (Appellant) escaped and commandeered an orange tractor that was parked in a driveway (3) The tractor was going as fast as it would go and was moving "away from law enforcement vehicles while attempting to evade them." (4) The chase had been continuing for over an hour. See, (CR.APP.OP.PP. 2-3). None of this evidence was discussed in the court review.

The Court of Appeals has failed to conduct a meaningful factual sufficiency review as specified by this court's decision

3

in CANE v. STATE, 958 S.W. 2d 404, 408 (TEX.CR.APP. 1997)(Should apply proper standard of review and discuss all the evidence) The requirement to discuss evidence identified by the appellant was reiterated by this court in SIMS v. STATE NO. 1328-01 (TEX.-CR.APP. March 12, 2003).

Like the court of appeals in SIMS SUPRA, the reviewing court in this case never mentioned, or presumably considered the evidence contained in the record. Id. at 3. The SIMS Opinion reversed for failure to acknowledge and consider specific evidence argued in support of a factual sufficiency claim. Id at 4-5

This court should grant review to provide guidance to the Fort Worth court of appeals and other courts of appeals, that a full review is required to properly evaluate a factual sufficiency point of error, SIMS V. STATE NO. 1328-01 PP. 4-5 (TEX.CR.-APP. MARCH 12, 2003).
This court should clarify that evidence argued by appellant should be discussed in this analysis. The court should also make clear that separate reviews for factual and legal sufficiency are required because of the different standards to be applied.

## PRAYER FOR RELIEF

WHEREFORE, PREMISE CONSIDERED, Appellant respectfully prays that the court grant this Petition for Discretionary Review

upon submission, reverse the judgment of the court of appeals.

RESPECTFULLY SUBMITTED

*Timothy Herring*

TIMOTHY HERRING (PRO-SE)
TDCJ NUMBER 01822827
JOHN B. CONNALLY UNIT
899 FM 632
KENEDY, TEXAS 78119

## CERTIFICATE OF SERVICE

The undersigned Appellant hereby certifies that a true and correct copy of the foregoing Petition for Discretionary Review has been mailed, U.S. Mail, Postage Prepaid, to the Office of the State Prosecuting Attorney P.O. Box 12405, Austin, Texas 78711 on this the 27th day of March 2015.

*Timothy Herring*

APPELLANT/PETITIONER

5

**APPENDIX**

**COURT OF APPEALS OPINION**



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-12-00546-CR

TIMOTHY HERRING                                                          APPELLANT

V.

THE STATE OF TEXAS                                                            STATE

----------

FROM THE 271ST DISTRICT COURT OF WISE COUNTY

----------

## MEMORANDUM OPINION[1]

----------

In one issue concerning only evidentiary sufficiency, appellant Timothy Herring appeals his conviction for attempted capital murder of a peace officer.[2] We affirm.

---

[1]See Tex. R. App. P. 47.4.

[2]See Tex. Penal Code Ann. §§ 15.01(a), 19.02(b)(1) (West 2011), § 19.03(a)(1) (West Supp. 2013).

## Background Facts

The facts relevant to this appeal are mostly uncontested. The parties differ, however, in their views on what inferences about appellant's intent may be reasonably drawn from those facts and whether any such inferences satisfied the State's burden of proof.

One early afternoon in June 2011, the police received a report that two people were traveling in Wise County in a white van that was stolen. The police found the van, and although they quickly arrested the passenger, the driver—appellant—escaped and commandeered an orange tractor[3] that was parked on a driveway. While driving the tractor, appellant wrapped a white, thick blanket (a "comforter") around all of his body except for his face, although it was very hot that day.[4]

Matthew Germain, a corporal with the Wise County Sheriff's Office, received a dispatch and traveled to the southwest part of Wise County. The dispatch instructed Corporal Germain to watch for the tractor. After being told that the driver of the tractor potentially had a gun on his hip and after looking for the tractor in a pasture with no success, Corporal Germain left the pasture, got into a marked police car, traveled on a county road, and saw the tractor moving in a field. The tractor was going "as fast as [it] would go" and was moving away

[3]The tractor, a Kubota, was larger than a riding lawn mower but not as large as a "big farm tractor."

[4]Appellant had stolen the blanket from a residence in the area.

2

from law enforcement vehicles while attempting to evade them, including the car containing Corporal Germain. At that point, the chase had been continuing for over an hour.

Texas Department of Public Safety Trooper Adolpho Patterson[5] and Corporal Germain leapt into a field over a barbed-wire fence to chase the tractor and to apprehend appellant. Trooper Patterson proceeded ahead of Corporal Germain once they reached a heavily wooded area containing briars; Trooper Patterson found a "better hole through the briars." While in the briars, Trooper Patterson could not see the tractor, but he could hear its engine revving as appellant was trying to get through the wooded area.[6]

Near the same time, Guy Cumbie, who lived near where the chase was occurring, received a call from his neighbor, who told Cumbie that "there was a guy on a stolen tractor rampaging across the countryside." After relaying that information to other neighbors, Cumbie grabbed a handgun and went outside on an all-terrain vehicle (ATV) to intercept the tractor. Cumbie found the tractor as it

---

[5]Trooper Patterson was conducting an unrelated traffic stop when he received a call about the chase. He received information that while on the tractor, appellant was damaging property, such as several fences and trees. He was also notified that appellant "had a weapon on his hip"; this report scared him. After seeking the tractor for about an hour, while driving on a county road, Trooper Patterson saw appellant on the tractor. When appellant saw Trooper Patterson and other officers, he turned the tractor away from them.

[6]Concerning the briars, Trooper Patterson testified, "The brush is just really thick; there's long thorns. And it's . . . like there's these rolls of thorns[,] . . . lots of trees, tall grass; it's just really thick."

was moving toward his house, moved his ATV in front of the tractor at a ninety-degree angle, and yelled and gestured for appellant to stop.

Appellant stared at Cumbie and stopped the tractor for a moment. Soon thereafter, however, appellant raised the tractor's bucket and began to accelerate toward Cumbie. It was apparent to Cumbie that appellant was "coming at [him] to ram [him] with the tractor." Cumbie feared that he was going to be killed by the tractor and its load bucket.

Just as Cumbie was about to reach for his handgun,[7] Trooper Patterson, who was wearing his DPS uniform, emerged from the briars. Trooper Patterson noticed that Cumbie looked afraid, saw that the tractor was moving directly toward Cumbie, drew his gun, moved near the ATV, and repeatedly commanded appellant to stop the tractor.

Appellant responded by ranting and saying to Trooper Patterson, "F--- you, mother f-----." He also redirected the tractor to charge toward Trooper Patterson and lifted the tractor's bucket higher; to Cumbie, it "was clear that [the tractor] was coming at [Trooper Patterson]." According to Trooper Patterson, when appellant shifted his attention to him from Cumbie, appellant "looked like the devil covered in a blanket"; he had a "mean look."

Appellant revved the engine "as loud as it could get" while turning in Trooper Patterson's direction. Because appellant had raised the tractor's bucket,

---

[7]Cumbie testified that he was "about a nano second" away from pulling out his gun.

Trooper Patterson and appellant could not see each other. Fearing for his life and to keep from getting run over, Trooper Patterson began to move to his left and fired a shot into the tractor's front passenger-side tire.

The tractor still did not slow down. Appellant stood up on the tractor, attempted to remove the blanket from around himself, and appeared to reach for something on his right side. Trooper Patterson saw a shiny item near appellant's right side that he thought was a rifle; he believed that he was going to be shot. Thus, after stepping to the tractor's side, from approximately ten yards away, Trooper Patterson fired two shots toward appellant, and appellant either jumped or fell off of the tractor.

As Corporal Germain was completing his navigation through the briars, he heard the first gunshot. After emerging from the briars, Corporal Germain saw Cumbie's ATV, watched appellant raise the tractor's load bucket and steer the tractor "[v]ery, very slowly" toward Trooper Patterson, and witnessed appellant's face-down fall from the tractor after Trooper Patterson fired the last two shots. Corporal Germain helped Trooper Patterson subdue and detain appellant, who continued to curse and be belligerent.[8] According to Corporal Germain, after appellant's arrest, he was loud and had an "I-don't-care attitude."

---

[8]Corporal Germain was close to the tractor when he emerged from the briars; he testified that it took him less than two seconds to get to appellant after appellant fell.

5

No officer ever found a gun on appellant or along the path where appellant had driven the tractor. Appellant caused almost $12,000 in damage to the tractor. At the end of the chase, the tractor had several hundred feet of barbed-wire fence wrapped around its axles. According to its owner, although it could move, it drove "almost like the brakes were on."

Jim Holland, a Texas Ranger, investigated the incident (including interviewing appellant) and concluded that appellant had intended to kill Trooper Patterson. A grand jury indicted appellant for attempted capital murder. The indictment alleged that appellant, with the specific intent to commit the capital murder of Trooper Patterson, had charged at him with the tractor and its load bucket. Through a separate indictment, a grand jury alleged that appellant had committed aggravated assault by threat against Cumbie.

Appellant pled not guilty to attempted capital murder and aggravated assault. The jury convicted appellant of attempted capital murder. Based on a guilty plea, the jury also convicted him of unauthorized use of a motor vehicle (the tractor), a state jail felony.[9] The jury found, however, that appellant was not guilty of aggravated assault against Cumbie. The trial court sentenced appellant to twenty years' confinement for the attempted capital murder conviction. Appellant brought this appeal.

---

[9]See Tex. Penal Code Ann. § 31.07 (West 2011).

## Evidentiary Sufficiency

Appellant argues only that the evidence is insufficient to support his attempted capital murder conviction. In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Winfrey*, 393 S.W.3d at 768. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We must presume that the factfinder resolved any conflicting inferences

7

in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Temple*, 390 S.W.3d at 360. When we conclude that evidence is insufficient under the *Jackson* standard to support a conviction, we must reverse the conviction and acquit the appellant. *Wooden v. State*, 101 S.W.3d 542, 549 (Tex. App.—Fort Worth 2003, pet. ref'd).

To obtain appellant's conviction for attempted capital murder under the facts of this case, the State was required to prove beyond a reasonable doubt that with the specific intent to kill Trooper Patterson and while knowing that Trooper Patterson was a peace officer,[10] appellant drove the tractor with its load bucket at him, which was an act amounting to more than mere preparation that tended but failed to kill Trooper Patterson. *See* Tex. Penal Code Ann. §§ 15.01(a), 19.03(a)(1); *Flanagan v. State*, 675 S.W.2d 734, 741 (Tex. Crim. App. 1982) (op. on reh'g) ("[A] specific intent to kill is a necessary element of attempted murder."); *Watkins v. State*, 333 S.W.3d 771, 776 (Tex. App.—Waco 2010, pet. ref'd) (reiterating that attempted murder requires a specific intent to kill).

An act "tends" to cause a result under the attempt statute (section 15.01) when it "could" cause that result. *See Weeks v. Scott*, 55 F.3d 1059, 1063–64 (5th Cir. 1995) (analyzing Texas decisions and upholding an HIV-positive defendant's conviction for attempted murder in a habeas corpus context when

---

[10]Appellant does not contend that the evidence is insufficient to prove his knowledge that Trooper Patterson was a peace officer.

8

the defendant had spat on a prison guard, which, according to testimony, could have transmitted HIV). The fact that a defendant could take other actions before completing the intended offense does not negate a conviction for attempt. *See* *Hackbarth v. State*, 617 S.W.2d 944, 946 (Tex. Crim. App. [Panel Op.] 1981); *Henson v. State*, 173 S.W.3d 92, 101 (Tex. App.—Tyler 2005, pet. ref'd).

In his brief, appellant does not primarily contest the jury's implicit finding that it was his intent or desire to kill Trooper Patterson with the tractor or that the evidence was sufficient to show such.[11] Rather, appellant principally argues that he could not have attempted to kill Trooper Patterson because the tractor, in its damaged and slow state at the end of the chase, was incapable of doing so. Specifically, he contends,

> By the time of [appellant's encounter with Trooper Patterson], the [tractor] (already a slow moving vehicle) was severely damaged and had several hundred feet of barbed wire fence wrapped around its axles. As it headed toward Mr. Cumbie, Mr. Cumbie felt no need to flee or even move. When it turned toward Trooper Patterson, the Trooper's main concern was that [appellant] was armed. Indeed, Trooper Patterson chose to stay in front of the [tractor] and the bucket for protection . . . .
>
> [Appellant] did not attempt to kill Trooper Patterson with the [tractor] for the simple reason *he could not have killed the Trooper with the [tractor]*. All Trooper Patterson had to do was step out of

---

[11]One subheading in appellant's brief contends that he could not have intended to kill anyone. But the argument under that subheading concerns the condition of the tractor rather than appellant's mindset. Specifically, appellant asserts under that subheading, "The testimony of the witnesses at trial leaves no doubt that the [tractor] could not be used to run down any conscious and mobile person."

the way. The crippled [tractor] was incapable of "running down" any unrestrained person.

. . . .

. . . [Appellant] could never have run down Trooper Patterson because all Trooper Paterson had to do . . . is exactly what he did do -- *step* to the side.[12]

When a defendant is charged with an attempt to commit a crime, "it is immaterial whether the attempted crime is impossible of completion if . . . completion was apparently possible to the defendant who was acting with the intent to commit the crime." *Chen v. State*, 42 S.W.3d 926, 930 (Tex. Crim. App. 2001). In other words, the defendant's intent is the "critical element in attempt offenses—not possible completion of the substantive offense."[13] *Id.* at 930 n.2. Thus, an attempt conviction may stand where the completion of the crime was "apparently possible" to the defendant, even if the completion of the crime was

---

[12]As appellant argues, the evidence does not show that Trooper Patterson lunged, dove, or ran to the side of the tractor. Trooper Patterson recognized that tractors "don't go fast" even if "they're revved up all the way."

[13]On appeal, appellant focuses almost exclusively on matters other than his mindset, including the condition of the tractor and the acts of Cumbie and Trooper Patterson. But during appellant's counsel's closing argument at trial, counsel stated,

The issue is: What was in [appellant's] mind? Did he intend to commit murder? . . .

. . . .

The test here is what was inside [appellant's] head. Was he trying to get [away], or was he trying to kill them? Was he trying to get away, or was he trying to run over them?

not actually possible. *See id.* at 930 (upholding a defendant's conviction for attempted sexual performance by a child even though the person with whom the defendant had conversed online was not actually a child); *see also Ashcraft v. State*, Nos. 03-06-00310-CR, 03-06-00311-CR, 2008 WL 2938733, at *6 (Tex. App.—Austin July 31, 2008, no pet.) (mem. op., not designated for publication) (quoting *Chen* and holding similarly).

Stated differently, factual impossibility is not a defense to an attempt crime. *See Chen*, 42 S.W.3d at 930; *Lawhorn v. State*, 898 S.W.2d 886, 892 (Tex. Crim. App. 1995) (reciting that if the "intended end is a legally proscribed harm, the failure to effect it because of the lack of a factual condition necessary to its occurrence . . . is no defense"); *Taylor v. State*, No. 02-10-00264-CR, 2011 WL 4345280, at *4 (Tex. App.—Fort Worth Sept. 15, 2011, pet. ref'd) (mem. op., not designated for publication) (affirming a conviction for attempted arson although the appellant argued that weather conditions and other factors made the completion of the arson factually impossible); *Giddings v. State*, 816 S.W.2d 538, 539–40 (Tex. App.—Dallas 1991, pet. ref'd) (affirming a conviction for attempted possession of cocaine that did not exist).

Here, appellant's offense was complete, and his conviction must be affirmed, if the evidence is sufficient to show that he intended to kill Trooper Patterson and acted upon that intent with more than mere preparation and with a tendency to effect murder. *See* Tex. Penal Code Ann. § 15.01(a); *see also Taylor*, 2011 WL 4345280, at *4 ("The attempted arson was completed when

11

Taylor lit the rag after pouring the gasoline onto the car. It mattered not whether he threw the rag on the car."). Viewing the evidence and reasonable inferences from the evidence in the light most favorable to the verdict, we conclude that the jury could have rationally found that the State met its burden of proof concerning these elements. *See Temple*, 390 S.W.3d at 360; *Sorrells*, 343 S.W.3d at 155.

Specifically, we conclude that the jury could have rationally inferred appellant's intent to kill Trooper Patterson and a sufficient step toward carrying out that intent from the evidence that appellant, in successive acts, accelerated directly toward Cumbie with, according to Cumbie, the intent to "ram" Cumbie with the tractor;[14] turned the tractor toward Trooper Patterson while Trooper Patterson was commanding appellant to stop, while appellant was cursing at Trooper Patterson, and while appellant was grimacing; revved the engine "as loud as it could get" while driving the tractor toward Trooper Patterson; raised the load bucket with the possible purpose of either ramming Trooper Patterson with it or protecting himself while continuing the tractor's charge toward Trooper Patterson; and continued moving the tractor toward Trooper Patterson even after Trooper Patterson fired a shot into the tractor's front passenger-side tire. From these acts, the jury could have rationally determined that it was "apparently

---

[14]Similarly, Trooper Patterson testified that when he first saw Cumbie and the tractor together, he believed that the tractor was going to run over Cumbie.

12

possible" to appellant to kill Trooper Patterson with the tractor.[15] *See Chen*, 42 S.W.3d at 930.

Appellant argues on appeal that Cumbie's decision to not move his ATV from the tractor's path signals that appellant could not have attempted to kill Trooper Patterson with the tractor and that Trooper Patterson could not have feared for his life. But Cumbie confirmed at trial that he had feared for his life when appellant had charged at him with the tractor. And although appellant argues that Cumbie's actions spoke louder than his words, when appellant's counsel asked Cumbie whether he could have driven his ATV away from appellant if he felt that he was in danger from appellant's charging at him with the tractor, Cumbie said,

> When I started to reach for the gun, before Trooper Patterson got there, I was contemplating -- you know, I -- I figured I could outrun him on the [ATV], *but I didn't -- I didn't want to turn around.*
>
> I . . . . figured he was armed. He had this blanket thing over him. And I didn't want to catch . . . a bullet in the back of the head. And I also didn't want to lead him up towards the house . . . that I was trying to keep him away from . . . . [Emphasis added.]

Based on this testimony, the jury could have reasonably found that Cumbie, like Trooper Patterson, was in fear of being killed by the tractor even though he did not attempt to escape from it.

---

[15]Also, as the State argues, the jury could have inferred appellant's knowledge that the tractor was capable of killing Trooper Patterson from the fact that appellant had already used the tractor to plow through fences and other objects.

Appellant also contends that Trooper Patterson feared for his life because of his belief that appellant had a gun, not because of appellant's charging at him with the tractor. But while Trooper Patterson testified that he was afraid of being shot, he also testified that when the tractor accelerated toward him, he was "fearing for [his] life and [he] didn't want to get run over."

In any event, although appellant's argument on appeal focuses to a significant extent on whether Cumbie or Trooper Patterson actually or reasonably feared the tractor, their fear was not an element of appellant's attempted capital murder offense. Under the penal code, a conviction for attempted murder does not require proof of the victim's fear or even of the victim's apprehension of the defendant's intent to kill. *See* Tex. Penal Code Ann. §§ 15.01(a); 19.02(b)(1); *see also Castillo v. State*, 186 S.W.3d 21, 27 (Tex. App.—Corpus Christi 2005, pet. ref'd) ("[T]he focus of attempted capital murder is the intentional attempt to kill . . . ."); *Roberson v. State*, 144 S.W.3d 34, 39 (Tex. App.—Fort Worth 2004, pet. ref'd) ("[T]he following are the elements of attempted murder: 1) a person, 2) with the specific intent to cause the death of another, 3) does an act amounting to more than mere preparation, 4) but fails to effect the death of the other individual.").

Appellant also contends that the evidence shows that he raised the tractor's bucket while accelerating toward Trooper Patterson to shield himself rather than to harm or kill Trooper Patterson. Cumbie opined, however, that appellant had raised the bucket while charging at him because appellant had

14

wanted to "get the [ATV]." Cumbie testified that it was "apparent" that appellant had intended to ram him with the tractor.

Also, Trooper Patterson testified that the bucket's raising concerned him because "at the same time that that happened, the tractor -- you know, the engine was -- went from, you know, being loud, as it was already, to -- as loud as it could get. It was just like the revving from the engine just revved all the way up."[16] We conclude that from this testimony, and especially from Trooper Patterson's statement that appellant revved the engine while raising the bucket and turning the tractor toward Patterson, the jury could have reasonably inferred that appellant raised the bucket while intending to kill Trooper Patterson with it.

But even if appellant is correct to argue that the most reasonable inference from his raising the bucket was that he was trying to shield himself, appellant's desire to shield himself with the bucket or hide behind it would not necessarily negate an associated intent to kill Trooper Patterson with the tractor. In fact, the jury could have reasonably concluded that appellant's hiding behind the bucket assisted his intent to ram Trooper Patterson with it and the tractor and to therefore kill him.

For all of these reasons, viewing the evidence in the light most favorable to the jury's verdict and deferring to the jury's weighing of the evidence, we conclude that a rational factfinder could have found the elements of attempted

---

[16]Appellant raised the bucket to the level of Trooper Patterson's face.

15

capital murder beyond a reasonable doubt. *See* Tex. Penal Code Ann. §§ 15.01(a), 19.02(b)(1), 19.03(a)(1); *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Blackman*, 350 S.W.3d at 595. We overrule appellant's only issue.

## Conclusion

Having overruled appellant's sole issue, we affirm the trial court's judgment.

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: January 16, 2014

16