NUMBER 13-04-490-CR


COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


CARLOS GUADALUPE GONZALEZ CANTU, Appellant,


v.


THE STATE OF TEXAS, Appellee.

 
 

On appeal from the 389th District Court of Hidalgo County, Texas

 


MEMORANDUM OPINION


Before Justices Hinojosa, Yañez, and Garza


Memorandum Opinion by Justice Garza


Following a jury trial, appellant, Carlos Guadalupe Cantu, was found guilty of capital
murder, see Tex. Pen. Code Ann. § 19.02(b)(1) (Vernon 2003), § 19.03(a)(2) (Vernon Supp.
2006), and attempted capital murder, see Tex. Pen. Code Ann. § 15.01(a) (Vernon 2003),
§ 19.03(a)(7)(A) (Vernon Supp. 2006). The trial court sentenced appellant to life
imprisonment for the capital murder conviction and assessed a $10,000 fine. The jury
sentenced appellant to ninety-nine years' imprisonment for the attempted capital murder
conviction and assessed a $10,000 fine. By five issues, appellant contends (1) the trial
court erred in denying his motion to quash (issues one and two), (2) the evidence is legally
and factually insufficient to support his convictions (issues three and four), and (3) the trial
court violated the double jeopardy clause (issue five). We affirm the judgment of the trial
court.

I. Factual Background

Juan and Soledad Viacobo resided in Donna, Texas at the time of the incident. The
Viacobo family consisted of Juan and Soledad and their eight children. At the time of the
incident, five of their eight children lived at their residence with them. Their daughters
Estela and Sonia occupied one room, their sons Carlos and Juan Antonio (Johnny) stayed
in another room, and Julio stayed in a third room. Their other son, Jaime, his wife, Mariana,
and their two children lived next to the Viacobo house in a travel trailer. Appellant's
convictions stem from the intrusion of the Viacobo home late in the evening on January 24,
2002, and early morning January 25, 2002. The incident began after the Viacobo family
had retired for the evening. Sometime after midnight, several armed men, including
appellant, broke into the Viacobo home firing their guns and claiming they were "the cops." 
While inside the home, the armed men engaged in altercations with the Viacobo family
members. The altercation ended with several of the Viacobo family members being injured,
either by gunshot wounds or by physical assault, and with the death of Carlos Viacobo. An
accomplice, Ruben Villarreal, also received a gunshot wound. 

After two eyewitnesses and accomplice Ruben Villarreal named appellant as a
suspect in the incident, appellant was arrested and indicted on charges of capital murder
and attempted capital murder. 

II. Indictment 

By his first and second issues, appellant contends the trial court committed reversible
error in denying his motion to quash the indictment. Appellant contends the trial court
violated his rights to due process in allowing the State to submit a jury instruction on the
theory of party liability when the indictment did not include an allegation of party liability. (1) 
Appellant contends that, as a consequence, he was found guilty of an offense not charged
in the indictment and for which he was not placed on notice, in violation of his rights to due
process under the Fifth, Sixth, and Fourteenth Amendments to the United States
Constitution, and under Article I, Sections 10 and 19 of the Texas Constitution. We find his
argument without merit.

Appellant argues "[a]llowing the State to proceed on any theory of criminal
responsibility not alleged in the indictment constitutes a constructive amendment of the
indictment" and "[a] constructive amendment which modifies an element of the offense
charged, is reversible error per se." In Pitts v. State, the court of criminal appeals held that
"if the evidence supports a charge on the law of the parties, as it does here, the court may
charge on the law of the parties even though there is no such allegation in the indictment." 
Pitts v. State, 569 S.W.2d 898, 900 (Tex. Crim. App. 1978). Appellant asserts that Pitts and
the relevant statutes, Texas Penal Code sections 7.01(c), 7.02(a)(2) and (b),
unconstitutionally violate the law of indictment as set forth in section 21.03 of the code of
criminal procedure. See Tex. Pen. Code Ann. §§ 7.01(c), 7.02(a)(2), (b) (Vernon 2003); see
also Tex. Code Crim. Proc. Ann. art. 21.03 (Vernon 1989). Appellant acknowledges that
the court of criminal appeals has repeatedly rejected claims that a charge on the law of
parties constitutes an impermissible amendment to an indictment. In Marable v. State, the
court reiterated, "it is well-settled that the law of parties need not be pled in the indictment." 
Marable v. State, 85 S.W.3d 287, 287 (Tex. Crim. App. 2002) (en banc) (citing cases). This
rule applies to the law of parties found in both section 7.02(a)(2) and section 7.02(b). 
Montoya v. State, 810 S.W.2d 160, 165 (Tex. Crim. App. 1989). Nonetheless, appellant
asks this Court to find this well-settled law unconstitutional. We decline to do so. See Sorto
v. State, 173 S.W.3d 469, 476 (Tex. Crim. App. 2005) (stating "it is well-settled that the law
of parties need not be pled in the indictment"); Vodochodsky v. State, 158 S.W.3d 502, 509
(Tex. Crim. App. 2005) (stating that the law of parties need not be pled in the indictment);
Vega v. State, 198 S.W.3d 819, 825 n.3 (Tex. App.-Corpus Christi 2006, no pet.). We
overrule appellant's first and second issues.

III. Legal & Factual Sufficiency

By his third and fourth issues on appeal, appellant contends the evidence is legally
and factually insufficient to support his convictions for capital murder and attempted capital
murder either as a primary actor or as a party. (2) Appellant's challenges to the legal and
factual sufficiency of the evidence are premised on his assertions that there is no evidence
(1) to establish that he committed some act with the intent to promote or assist the
commission of the offenses by encouraging, directing, aiding, or attempting to aid in
committing the offenses, or (2) that he entered into an agreement before or
contemporaneous with the criminal event in question. Appellant argues that his mere
presence during the commission of the offenses is not sufficient to support a conviction.

A. Standard of Review

When reviewing the legal sufficiency of the evidence, we view the evidence in the
light most favorable to the verdict to determine whether any rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt. Jackson v.
Virginia, 443 U.S. 307, 319 (1979); Drichas v. State, 175 S.W.3d 795, 798 (Tex. Crim. App.
2005); Sanders v. State, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003). In determining
whether evidence is sufficient to convict, we must examine the totality of the circumstances. 
Vodochodsky, 158 S.W.3d at 509. This standard is applicable in both direct and
circumstantial evidence cases. Chambers v. State, 711 S.W.2d 240, 244-45 (Tex. Crim.
App. 1986). We are not fact finders; our role is that of a due process safeguard, ensuring
only the rationality of the trier of fact's finding of the essential elements of the offense
beyond a reasonable doubt. See Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App.
1988).

When evaluating a challenge to the factual sufficiency of the evidence, we view all
the evidence in a neutral light and inquire whether the jury was rationally justified in finding
guilt beyond a reasonable doubt. Zuniga v. State, 144 S.W.3d 477, 484 (Tex. Crim. App.
2004). A reviewing court may find the evidence factually insufficient in two ways. Id. First,
when considered by itself, the evidence supporting the verdict may be too weak to support
the finding of guilt beyond a reasonable doubt. Id. Second, after weighing the evidence
supporting the verdict and the evidence contrary to the verdict, the contrary evidence may
be strong enough that the beyond-a-reasonable-doubt standard could not have been met. 
Id. at 484-85. In conducting the factual-sufficiency review, we must employ appropriate
deference so that we do not substitute our judgment for that of the fact finder. Id. at 481-82. 
Our evaluation should not intrude upon the fact finder's role as the sole judge of the weight
and credibility given to any witness's testimony. Cain v. State, 958 S.W.2d 404, 407 (Tex.
Crim. App. 1997). In conducting a factual-sufficiency review, we must discuss the evidence
appellant claims is most important in allegedly undermining the jury's verdict. Sims v. State,
99 S.W.3d 600, 603 (Tex. Crim. App. 2003). 

Under either review, the jurors are the exclusive judges of the facts, the credibility of
the witnesses, and the weight to give their testimony. Swearingen v. State, 101 S.W.3d
89, 97 (Tex. Crim. App. 2003); Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App.
2000). A jury is entitled to accept one version of the facts and reject another, or reject any
part of a witness's testimony. Margraves, 34 S.W.3d at 919. 

In a criminal conviction, sufficiency of the evidence is determined by the elements
of the crime as defined by the hypothetically correct jury charge. Malik v. State, 953 S.W.2d
234, 240 (Tex. Crim. App. 1997); Adi v. State, 94 S.W.3d 124, 131 (Tex. App.-Corpus
Christi 2002, pet. ref'd). The correct charge is one that accurately sets out the law, is
authorized by the indictment, does not unnecessarily increase the State's burden of proof
or unnecessarily restrict the State's theories of liability, and adequately describes the
particular offense for which the defendant was tried. Malik, 953 S.W.2d at 240; Adi, 94
S.W.3d at 131.

B. Applicable Law

A person commits capital murder if he commits murder as defined under section
19.02(b)(1) and intentionally commits the murder in the course of committing or attempting
to commit . . . burglary. Tex. Pen. Code Ann. §§ 19.02(b)(1), 19.03(a)(2). A person
commits murder under section19.02(b)(1) if he intentionally or knowingly causes the death
of an individual. Id. § 19.02(b)(1). Appellant was specifically charged with committing
murder while in the course of committing or attempting to commit burglary of a habitation. 
A person commits burglary of a habitation if, without the effective consent of the owner, he
enters a habitation and commits or attempts to commit a felony, theft, or an assault. Tex.
Pen. Code Ann. § 30.02(a)(3) (Vernon 2003). (3) 

A person commits the offense of attempted capital murder if, with the specific intent
to commit a capital murder, he does an act amounting to more than mere preparation that
tends but fails to effect the commission of the offense intended. See Tex. Pen. Code Ann.
§§ 15.01(a), 19.03(a)(7)(A). A person commits capital murder if he commits murder as
defined under section 19.02(b)(1) and intentionally or knowingly causes the death of more
than one person during the same criminal transaction. See Tex. Pen. Code Ann. §§
19.02(b)(1), 19.03(a)(7)(A). The indictment alleges that appellant intentionally and
knowingly attempted to cause the deaths of Carlos Viacobo, Jaime Viacobo, and Julio
Viacobo, by shooting them with a firearm, and all attempts were committed during the same
criminal transaction, amounting to more than mere preparation that tended but failed to
effect the commission of the offense intended. 

In the present case, the jury was instructed that it could find appellant guilty of capital
murder and attempted capital murder either as a party or as a principal. See Tex. Pen.
Code Ann. §§ 7.01(a), 7.02(a). A person is criminally responsible as a party to an offense
if the offense is committed by his own conduct, by the conduct of another for which he is
criminally responsible, or by both. Tex. Pen. Code Ann. § 7.01(a); Vodochodsky, 158
S.W.3d at 509. A person is criminally responsible for an offense committed by the conduct
of another if, acting with the intent to promote or assist the commission of the offense, he
solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. 
Tex. Pen. Code Ann. § 7.02(a)(2); Vodochodsky, 158 S.W.3d at 509. 

Evidence is sufficient to convict a defendant under the law of parties where he is
physically present at the commission of the offense and encourages the commission of the
offense either by words or other agreement. Salinas v. State, 163 S.W.3d 734, 739 (Tex.
Crim. App. 2005) (citing Ransom v. State, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994)). 
While the presence of an accused at the scene of an offense is not alone sufficient to
support a conviction, it is a circumstance tending to prove guilt, which, combined with other
facts, may suffice to show that the accused was a participant. Beardsley v. State, 738
S.W.2d 681, 685 (Tex. Crim. App. 1987). In determining whether there is sufficient
evidence to convict under the law of parties where the defendant is physically present at the
commission of the offense, the reviewing court may look to events occurring before, during,
and after the commission of the offense, may rely on actions of the defendant that show an
understanding and common design to do the prohibited act, and may use circumstantial
evidence to prove party status. Salinas, 163 S.W.3d at 739 (citing Ransom, 920 S.W.2d
at 302). Further, participation in an enterprise may be inferred from circumstances and
need not be shown by direct evidence. Beardsley, 738 S.W.2d at 684. While flight alone
will not support a guilty verdict, evidence of flight from the scene of a crime is a
circumstance from which an inference of guilt may be drawn. Valdez v. State, 623 S.W.2d
317, 321 (Tex. Crim. App. 1979).

1. Legal Sufficiency Analysis

The following evidence relevant to our review was elicited at trial:

Jaime Viacobo testified that on the night of the incident, his wife, Mariana, woke him
up and told him that a truck with several men had pulled up to the Viacobo's property. 
Jaime got up, looked out the window, and saw a man pointing a gun and trying to pull open
the door to their trailer. Jaime identified this individual as Ruben Villarreal and testified that
Villarreal was carrying a rifle. Jaime grabbed two knives from the kitchen and ran out of his
trailer and into his mom's house through the kitchen door. Jaime testified that when he
entered his mom's house, he heard his dad screaming and saw him fighting with two men. 
He testified that one of the men was short and the other was a light-complected male
wearing a blue and white flannel jacket. Jaime identified the man wearing the blue and
white flannel jacket as appellant and testified that appellant had a gun in his hand. He
testified he saw appellant hit his dad and saw his dad screaming and bleeding. Jaime
testified he was able to see appellant even though it was dark in the house because his
mom had three candles lit on the stove and the light from two light poles outside shed light
inside the house. He testified he recognized appellant because he saw his face and
because of appellant's jacket and light skin color. 

Jaime testified that after he entered the kitchen, he started fighting with Ruben
Villarreal. He testified he tried to stab Villarreal, but the knife bent. Villarreal then tried to
shoot Jaime and the two started wrestling for the gun. Jaime testified they wrestled for a
few seconds before the gun fired. Villarreal fell down and dragged himself out the kitchen
door. Jaime had the gun in his hand, walked outside, and tried to shoot Villarreal, but the
gun would not "go off". Jaime then went around to the back of the house to try to unlock
the gun. He then walked around the trailer and saw a red pickup leaving the property. He
shot at the truck, then proceeded to follow it in his brother's vehicle, but lost track of it. 
Jaime testified he was shot in the leg, but did not know who shot him. 

Jaime also testified that he was shown a photo line-up at the Hidalgo County Sheriff's
Office about one month after the incident. He testified he was able to identify both appellant
and Villarreal as suspects from the line-up. He testified that no one suggested to him who
the suspect was, the photos were not presented in a way to hint that appellant was the
suspect, and that he identified appellant based on his observation of appellant on the night
of the incident. He testified that he did not speak to Mariana after he identified appellant
in the photo line-up and further testified that he did not know an arrest warrant had been
issued for appellant at that time. Jaime testified that he did not have any doubt that
appellant is the same man he saw on the night of the incident. 

Mariana testified that she was standing in her trailer at her kitchen window when she
saw a red truck pull into the driveway. She observed three men exit the truck, stand in front
of the truck for a "meeting" that lasted "seconds," after which two of the men ran towards
the Viacobos' patio and appellant ran into the carport. She testified she was able to see the
faces of two of the men, including appellant's face when he first exited the truck and stood
in front of it. Mariana testified that the light from the light pole "cleared up his face." She
testified that she observed that the men were armed and that one of them tried to get into
her trailer. She also testified that she saw appellant a second time that evening. She
testified that after all the shots were fired, she saw appellant exit the house through the front
patio with a rifle in his hand. She observed that when appellant exited the house, he
noticed the man in the cap, later identified as Ruben Villarreal, dragging himself on the
ground, then appellant "ran-he hesitated and he ran back." She testified that she saw
appellant up closer this time because he was right in front of the window. She further
testified that she was able to see the events she testified to, even though it was night,
because the light pole lit up the whole area. Mariana also testified that she saw her sister-in-law crying because Julio Viacobo had been shot several times and was "bleeding all
over." (4) Mariana testified that Jaime was also bleeding from his leg due to a gunshot wound
and that she saw Carlos lying on the ground and that Carlos was "already gone." 

Mariana also testified that she was shown a photo line-up at the sheriff's office about
one month after the incident. She testified that nobody suggested who the suspect was and
that Investigator Pablo Silva, of the Hidalgo County Sheriff's Department, only told her that
the photo array included pictures of possible suspects. Mariana denied knowing an arrest
warrant had been issued for appellant at this time. She testified that she identified appellant
as a suspect because she had seen him at the scene of the crime and further testified that
she would have recognized appellant even if she had not been shown the photo line-up. 
Mariana testified that she had never seen appellant prior to the night of the incident and 
that "there is no way" she could be mistaken about appellant being the same person who
was at the Viacobo house on the night of the incident. 

On direct examination by the State, Ruben Villarreal testified that Johnny Morales
invited him, appellant, Rosbel Garza, an individual named "Chuy," and another unknown
individual to Donna. He testified that he did not know what they were going for, but he,
Rosbel, Chuy, and Johnny all had weapons. He testified that appellant exited the truck at
the Viacobo residence and entered the residence. Villarreal testified that he was shot while
inside the Viacobos' home. He testified that after he was shot, he somehow ended up back
in the truck where he sat in the middle, the unknown individual drove, Rosbel sat in the front
passenger side, and "Chuy" sat in the back. When asked where appellant was at this point,
Villarreal responded "I wasn't aware of him." He testified he did not see who shot Carlos
Viacobo. He also testified that he was the only assailant caught on the night of the incident. 
On cross-examination, Villarreal testified that he did not know if appellant had a weapon. 
Villarreal also testified that he did not know why he was invited to the Viacobo residence.

On re-direct examination, the State introduced a written statement given by Villarreal
to Investigator Silva on January 28, 2002. The statement was admitted by the State as a
prior inconsistent statement. See Tex. R. Evid. 607, 613. In his written statement, Villarreal
stated that all the men, including appellant, knew they were going to Donna to commit a
robbery. 

On direct examination by the State, Investigator Pablo Silva testified that Mariana
and Jaime were not allowed to speak to each other when they attended the photo line-up. 
Silva testified that the Viacobos were informed that there were suspects in the case and that
he believed they had been notified that warrants had been issued. He further testified that
a warrant for appellant had already been issued at the time of the photo line-up. On cross-examination, when asked whether Jaime and Mariana knew, at the time of the photo line-up, that a warrant was issued for appellant, Silva answered, "Yes." 

In an effort to support his argument that the evidence is legally insufficient to support
his convictions, appellant attacks the testimony of Mariana Martinez and Jaime Viacobo. 
Appellant contends Mariana and Jaime's testimony identifying appellant as one of the
perpetrators is inaccurate and questionable because Mariana, who was pregnant at the
time, "was scared for herself and for her children," and Jaime was "scared and angry" that
night. He points out that the Viacobo family members were "uncooperative with police,
emotional, upset, traumatized, scared, nervous, shaking, belligerent and hysterical." 
Appellant argues that these "variables" should be taken into consideration in determining
the accuracy of their testimony. The jury heard testimony from Mariana that on the night
of the incident, she had her two children (ages two and three) with her and that she was six
months pregnant. They also heard her testify that she and her children were scared. The
jury also heard Jaime testify that he was scared and angry that evening. Appellant asks us
to substitute our judgment for that of the jury and asks us to find that the evidence is legally
insufficient because Mariana and Jaime's state of mind on the night of the incident brings
into question the accuracy of their testimony. However, we remain mindful that it was the
jury's role to weigh the credibility of the witnesses' testimony, to believe or disbelieve the
witnesses' testimony, and to reconcile any conflicts in the evidence. See Swearingen, 101
S.W.3d at 97; Margraves, 34 S.W.3d at 919. 

Appellant further attacks Mariana and Jaime's identification of him, arguing that the
investigation was botched because they were informed of the issuance of an arrest warrant
for him before they actually identified him in the photo line-up. As noted above, Mariana
and Jaime unequivocally testified that they were not aware that a warrant had issued for
appellant at the time of the photo line-up. Investigator Silva testified that the Viacobos were
informed that there were suspects in the case and that he believed they had been notified
that warrants had been issued. He also testified that Jaime and Mariana knew a warrant
had issued for appellant. It was the jury's role to weigh the credibility of the witnesses'
testimony, to believe or disbelieve the witnesses' testimony, and to reconcile any conflicts
in the evidence. See Swearingen, 101 S.W.3d at 97; Margraves, 34 S.W.3d at 919. The
jury could have reasonably concluded that while Jaime and Mariana may have been aware
that suspects had been named and that warrants had issued, it was possible that they did
not know the identities of those involved. Further, given Silva's testimony that he "believed"
they knew a warrant had issued for appellant, the jury could have chosen to disbelieve his
testimony and believe the testimony of Jaime and Mariana, that they did not know a warrant
had issued for appellant at the time of the line-up. (5) 

Appellant also relies on Ruben Villarreal's testimony at trial that he did know why he
was invited to Donna (to the Viacobo residence) on the night of the incident and that he was
not "aware of [appellant]" in support of his argument that he did not know what he was being
invited to. However, the jury was presented with evidence that Villarreal had previously
given a written statement stating that all the men, including appellant, knew they were going
to Donna to commit a robbery. Given the jury's role as fact finder, it was within their
province to accept or reject all or part of Villarreal's testimony and to resolve any conflicts
and inconsistencies in the evidence. See Swearingen, 101 S.W.3d at 97; Margraves, 34
S.W.3d at 919. Based on its resolution of the facts and credibility determinations, the jury
implicitly rejected Villarreal's testimony at trial and gave weight to his written statement in
reaching its decision. 

Further, Villarreal's testimony that he was not "aware" of appellant when the events
transpired, is inconsequential. Villarreal's testimony that he was not aware of appellant was
in response to being asked where appellant was when Villarreal got back into the truck and
fled from the Viacobos' property. To the extent that appellant implies that he was not
present at the Viacobos' home on the night of the incident, the jury heard testimony from
Villarreal that appellant went with them to the Viacobo residence and entered the residence
on the night of the incident. Appellant concedes on appeal that he was inside the Viacobo
home. See Appellant's Brief p.39. He argues, "[e]ven while inside the house, no
evidence exists as to any actions taken by the Appellant that establish that he acted with
the intent to assist or promote the offenses contained within the indictment." (6)

Viewing the evidence in the light most favorable to the verdict, we hold that the
evidence is legally sufficient to show that appellant, acting as a party, "encouraged, . . .
aided, or attempted to aid" in the murder of Carlos Viacobo and the attempted murder of
Jaime Viacobo and Julio Viacobo. See Salinas, 167 S.W.3d at 739. The above evidence
likewise shows that appellant, along with the other parties involved, "were acting together,
each contributing some part towards the execution of their common purpose." Id. 

2. Factual Sufficiency

In support of his contention that the evidence is factually insufficient to sustain his
convictions, appellant re-urges his argument that Jaime and Mariana's identification of
appellant was botched because they were informed of the issuance of a warrant for
appellant's arrest at the time of the photo line-up, and his argument that he did not know
what he was getting invited to when he went to the Viacobos' house. He contends this
evidence undermines confidence in the jury's verdict. 

We have already held that the jury was free to believe or disbelieve Jaime and
Mariana's testimony that they were not aware of the issuance of a warrant for appellant's
arrest at the time of the photo line-up. Further, a rational jury could have believed that
Jaime and Mariana only knew that there were suspects in the case and that warrants had
issued, without actually knowing the identity of those individuals. See Swearingen, 101
S.W.3d at 97; Margraves, 34 S.W.3d at 919. In addition, given Silva's testimony that he
believed Jaime and Mariana knew of the warrant, a rational jury could have considered
Silva's testimony questionable and could have chosen to disregard or disbelieve it in its
entirety. See Swearingen, 101 S.W.3d at 97; Margraves, 34 S.W.3d at 919. 

We have also already held that the jury rationally could have found Villarreal's written
statement- that all the men, including appellant, knew about the robbery- more credible
than his trial testimony that they did not know why they were going to Donna. See
Swearingen, 101 S.W.3d at 97; Margraves, 34 S.W.3d at 919. As fact finder, it was within
the jury's province to weigh the credibility of the witnesses' testimony, to believe or
disbelieve the witnesses' testimony, and to reconcile any conflicts in the evidence. See
Swearingen, 101 S.W.3d at 97; Margraves, 34 S.W.3d at 919. 

The evidence supporting the verdict includes the eyewitness testimony of Jaime and
Mariana identifying appellant as one of the assailants. It also includes the accomplice
testimony of Ruben Villarreal that four of the five men (not including appellant) were armed,
that appellant went to the Viacobo residence, entered the residence, and knew about the
robbery before they headed to Donna to carry it out. See Salinas, 163 S.W.3d at 739. 

Considering all the evidence in a neutral light, we conclude that the proof of
appellant's guilt as a party to capital murder and attempted capital murder is not so
obviously weak as to undermine confidence in the jury's determination, nor is it greatly
outweighed by contrary proof. 

We overrule appellant's third and fourth issues. 

IV. Double Jeopardy 

By his fifth issue, appellant contends that his convictions for capital murder and
attempted capital murder violate his right against the imposition of multiple punishments
under the Fifth Amendment's double jeopardy clause. See U.S. Const. amend. V; Tex.
Const., art. I, § 14. (7)
 The State contends the legislature intended that the capital murder
of an individual while committing a burglary, as provided in section 19.03(a)(2), and the
attempted capital murder of three individuals committed during the same criminal
transaction, as provided in section 19.03(a)(7)(A), be separate offenses punishable by
separate convictions and separate sentences. We agree with the State. 

Although appellant failed to raise any double jeopardy objection before the trial court,
a double jeopardy claim may be raised for the first time on appeal if (1) the undisputed facts
show the double jeopardy violation is clearly apparent on the face of the record and (2)
enforcement of the usual rules of procedural default serves no legitimate state interests. 
Langs v. State, 183 S.W.3d 680, 686 (Tex. Crim. App. 2006) (citing Gonzalez v. State, 8
S.W.3d 640, 642-43 (Tex. Crim. App. 2000)). 

The Double Jeopardy Clause protects against multiple punishments for the same
offense. U.S. Const. amend. V; North Carolina v. Pearce, 395 U.S. 711, 717 (1969),
overruled in part on other grounds by Alabama v. Smith, 490 U.S. 794 (1989); Langs, 183
S.W.3d at 685; Castillo v. State, 186 S.W.3d 21, 25 (Tex. App.-Corpus Christi 2005, pet.
ref'd). The Fifth Amendment's multiple punishments prohibition is violated when a
defendant "is convicted of more offenses than the legislature intended." Saenz v. State,
166 S.W.3d 270, 272 (Tex. Crim. App. 2005) (citing Ex Parte Ervin, 991 S.W.2d 804, 807
(Tex. Crim. App. 1999)). 

The legislature is endowed with the power to establish and define criminal offenses. 
Id. (citing Ex parte Hawkins, 6 S.W.3d 554, 556 (Tex. Crim. App. 1999)). The Double
Jeopardy Clause puts little, if any, limitation on this power. Id. The present case is unlike
a situation involving different statutes, which, by itself, is some indication of legislative intent
to authorize multiple prosecutions simply because the offenses are separately defined in
different statutes. In determining whether a particular course of conduct involves one or
more distinct offenses under a single statute, we must ascertain the "allowable unit of
prosecution" under the statute. Id. (citing Sanabria v. United States, 437 U.S. 54, 57
(1978); Hawkins, 6 S.W.3d at 556). An "allowable unit of prosecution" is a distinguishable
discrete act that is a separate violation of the statute." Hawkins, 6 S.W.3d at 557. Thus,
our task here is to discern legislative intent in order to ascertain whether appellant's conduct
violates two distinct statutory provisions within the capital murder statute, in other words,
whether appellant may be subjected to two "units of prosecution" under the statute. See
Saenz, 166 S.W.2d at 272 (citing Hawkins, 6 S.W.3d at 556-57); see also Vick v. State, 991
S.W.2d 830, 832 (Tex. Crim. App. 1999). 

The relevant factors to be considered in determining the legislative intent concerning
the allowable unit of prosecution are statutory construction and whether the statute's
legislative history expresses an intent to treat the crimes as the same offense rather than
separate and severally punishable offenses. Saenz, 166 S.W.2d at 272 (citing Ervin, 991
S.W.2d. at 814).

Appellant was convicted of capital murder for causing the death of Carlos Viacobo
while in the course of committing or attempting to commit burglary of a habitation. See Tex.
Pen. Code Ann. § 19.03(a)(2). Appellant was also convicted of attempted capital murder
for trying to kill more than one person during the same criminal transaction, specifically,
Carlos Viacobo, Jaime Viacobo, and Julio Viacobo. See Tex. Pen. Code Ann. §
19.03(a)(7)(A). Section 19.03(a)(2) permits a conviction for capital murder if the accused
committed murder as defined under section 19.02(b)(1) of the penal code and the accused
intentionally commits the murder in the course of committing or attempting to commit
burglary. Tex. Pen. Code Ann. § 19.03(a)(2). Section 19.03(a)(7)(A) permits conviction for
capital murder if the accused committed murder as defined under section 19.02(b)(1) of the
penal code and the accused murders (or attempts to murder) more than one person. Tex.
Pen. Code Ann. § 19.03(a)(7)(A). The elements encompassed under section 19.03(a)(2)
differ from those in section 19.03(a)(7)(A). See Kitchens v. State, 170 S.W.3d 837, 839
(Tex. App.-Amarillo 2005, no pet.) (concluding that the elements or acts encompassed
under section 19.03(a)(2) differ from those in section 19.03(a)(7)(A) and holding that the
Double Jeopardy Clause was not violated even though the murder victim's name was used
in both instances). Admittedly, both require proof of murder, but section 19.03(a)(2)
obligates the State to also prove burglary or attempted burglary (the "unit of prosecution"
being murder committed in the course of the commission of certain other offenses), while
section 19.03(a)(7)(A) obligates the State to prove at least one more murder or attempted
murder (the "unit of prosecution" being the murder of more than one person). See id.; see
also Saenz, 166 S.W.3d at 273 (stating that the allowable unit of prosecution for section
19.03(a)(7)(A) is the commission of any additional murders). Thus, in the present case, the
allowable unit of prosecution reflected in the capital murder indictment, specifically, murder
committed in the course of committing or attempting to commit burglary, differs from the unit
of prosecution reflected in the attempted capital murder indictment, the attempt to murder
more than one person. Kitchens, 170 S.W.3d at 839. Because they differ, the prosecution
of appellant for capital murder founded upon section 19.03(a)(2) and for attempted capital
murder founded upon section 19.03(a)(7)(A) does not violate the Double Jeopardy Clause
even though Carlos Viacobo is named as the murder victim in both instances. See id.
(citing Vick, 991 S.W.2d at 832-33 (holding that double jeopardy does not arise where the
accusation in the second indictment requires proof of an act separate and distinct from the
acts alleged in the first)); see also Castillo v. State, 186 S.W.3d 21, 26-27 (Tex.
App.-Corpus Christi 2005, pet. ref'd) (holding that attempted capital murder and murder are
not the same offense for the purpose of double jeopardy). (8) Further, the statute separates
the sections by "or", which is some indication that any one of the prohibited types of conduct
constitutes a separate offense. See Haight v. State, 137 S.W.3d 48, 50-51 (Tex. Crim. App.
2004); Vick, 991 S.W.2d at 832. In addition, section 19.03's various sub-sections
specifically define capital murder in ways that involve different and distinct acts to commit. 
These considerations lead us to conclude that the legislature intended that each separately
described conduct constitutes a separate statutory offense. 

We overrule appellant's fifth issue.

Having overruled all of appellant's issues on appeal, we affirm the judgment of the
trial court. 



 _________________________

 DORI CONTRERAS GARZA,

 Justice


Do not publish. 

Tex. R. App. P. 47.2(b).

Memorandum Opinion delivered and 

filed this the 21st day of December, 2006.
1. The charge authorized the jury to convict appellant under three theories of capital murder: (1) as a principal,
(2) as a party under section 7.02(a)(2) of the penal code, or (3) as a conspirator under the law of parties as
contained in penal code section 7.02(b). See Tex. Pen. Code Ann. § 7.02(a)(2),(b) (Vernon 2003).
2. When the trial court's charge authorizes the jury to convict on more than one theory, as it did in this case, the
verdict of guilty will be upheld if the evidence is sufficient on any one of the theories. See Guevara v. State,
152 S.W.3d 45, 49 (Tex. Crim. App. 2004) (citing Rabbani v. State, 847 S.W.2d 555, 558 (Tex. Crim. App.
1992)); see also Ladd v. State, 3 S.W.3d 547, 557 (Tex. Crim. App. 1999) (holding that when not possible to
tell whether jury found appellant guilty on specific theory and jury charge authorizes jury to convict on several
different theories, verdict of guilt will be upheld if evidence is sufficient on any one theory). Because we
conclude the evidence was legally and factually sufficient to convict appellant as a party to capital murder and
attempted capital murder, we need not address whether the evidence was sufficient to convict appellant as
a primary actor. 
3. A hypothetically correct charge would instruct the jury to convict appellant of capital murder if he (1)
intentionally (2) committed murder (3) in the course of committing or attempting to commit burglary of a
habitation (4) either as a party or a principal. See Tex. Pen. Code Ann. § 19.02(b)(1) (Vernon 2003), §
19.03(a)(2) (Vernon Supp. 2006); see also Tex. Pen. Code. Ann. § 7.01(a) (Vernon 2003). 
4. Julio Viacobo testified that he struggled with four men inside the Viacobo home and that he was shot six
times in his stomach, twice in his left knee, and once in his ankle.
5. Further, we note that appellant has failed to develop a meaningful analysis or explanation on how the
"botched" investigation renders Jaime and Mariana's identification of appellant invalid. See Tex. R. App. P.
38.1(h).
6. Appellant goes on to explain that, if he was seen in an altercation inside the house, "it can be reasonably
inferred that said alleged altercation was done in self defense." We find this contention wholly without merit. 
It cannot "reasonably" be inferred that appellant, along with armed individuals, can break into a home after
midnight, and then claim that any altercations that follow are as a result of self-defense on his part. Clearly,
the jury, in its role as fact finder, rejected any such inference. 
7. This provision is applied to the states through the Due Process Clause of the Fourteenth Amendment. Illinois
v. Vitale, 447 U.S. 410, 415 (1980). The Texas Constitution also proscribes double jeopardy. Tex. Const.,
art. I, § 14. The double jeopardy ban under the Texas Constitution affords no broader protection than the
federal constitution. Stephens v. State, 806 S.W.2d 812, 815 (Tex. Crim. App. 1990); Moreno v. State, 1
S.W.3d 846, 863 (Tex. App.-Corpus Christi 1999, pet. ref'd).

8. Appellant relies on Moreno v. State and Saenz v. State, in support of his argument that his convictions violate
the Double Jeopardy Clause. Saenz v. State, 166 S.W.3d 270, 271 (Tex. Crim. App. 2005); Moreno v. State,
1 S.W.3d 846, 864 (Tex. App.-Corpus Christi 1999, pet ref'd). In Moreno, the defendant was convicted for
capital murder and attempted capital murder pursuant to section 19.03(a)(7)(A). Moreno, 1 S.W.3d at 864. 
This Court held that the defendant's double jeopardy right was violated because attempted capital murder was
a lesser-included offense of capital murder. Id. In Saenz, the defendant was convicted of three counts of
capital murder under section 19.03(a)(7)(A). Saenz, 166 S.W.3d at 271. The court of criminal appeals held
that the Double Jeopardy Clause of the Fifth Amendment was violated when the State charged the defendant
with three separate counts of capital murder under § 19.03(a)(7)(A). Id. The court held that the applicable
unit of prosecution when section 19.03(a)(7)(A) is involved consists of the victim's murder coupled with the
murders of one or more additional people during the same criminal transaction. Id. at 273. And, given that
the unit of prosecution was so comprised, the legislature intended that the defendant be tried under section
19.032(a)(7)(A) only once for all the murders upon which the charge was based. Id. at 273-72. 

 The present case is distinguishable from Moreno and Saenz. In Moreno, the defendant's convictions
for capital murder and attempted capital murder were both founded upon section 19.03(a)(7)(A) and both
involved the same unit of prosecution. In Saenz, all three convictions for capital murder were also founded
upon section 19.03(a)(7)(A) and all involved the same unit of prosecution, the murder of more than one
person. In the present case, appellant's charges stem from two different provisions under the capital
punishment statute, sections 19.03(a)(2) and 19.03(a)(7)(A), and each involve two separate units of
prosecution. Accordingly, we do not find the cases relied on by appellant to be controlling.